1  LOCKRIDGE GRINDAL NAUEN P.L.L.P.
2  REBECCA A. PETERSON (241858)
   ROBERT K. SHELQUIST
3  100 Washington Avenue South, Suite 2200
   Minneapolis, MN 55401
4  Telephone: (612) 339-6900
   Facsimile: (612) 339-0981
5  E-mail: rkshelquist@locklaw.com
           rapeterson@locklaw.com
6
7  [Additional Counsel on Signature Page]

8

9                    UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12  NEIL SEBASTIANO, Individually and    )  Case No.
    on Behalf of All Others Similarly    )
13  Situated,                            )  **CLASS ACTION COMPLAINT FOR:**
                                         )
14                          Plaintiff,   )  (1) NEGLIGENT
                                         )  MISREPRESENTATION;
15        v.                             )  (2) VIOLATIONS OF THE
                                         )  CALIFORNIA CONSUMER LEGAL
16  BIG HEART PET BRANDS, INC., a        )  REMEDIES ACT;
    Delaware corporation,                )  (3) VIOLATIONS OF THE
17                                       )  CALIFORNIA FALSE ADVERTISING
                            Defendant.   )  LAW;
18                                       )  (4) VIOLATIONS OF THE
                                         )  CALIFORNIA UNFAIR
19                                       )  COMPETITION LAW;
                                         )  (5) NEGLIGENCE;
20                                       )  (6) BREACH OF EXPRESS
                                            WARRANTY;
21                                          (7) BREACH OF IMPLIED
                                            WARRANTY;
22                                          (8) FRAUDULENT CONCEALMENT;
                                            AND
23                                          (9) VIOLATIONS OF FLORIDA
                                            DECEPTIVE AND UNFAIR TRADE
24                                          PRACTICES ACT.
                                            10) BREACH OF EXPRESS
25                                          WARRANTY, FLA. STAT. § 672.313
                                            11) BREACH OF IMPLIED
26                                          WARRANTY, FLA. STAT. § 672.314

27                                          DEMAND FOR JURY TRIAL

28
    ─────────────────────────────────────────────────────
                        CLASS ACTION COMPLAINT

1.      Plaintiff Neil Sebastiano ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned attorneys, brings this Class Action Complaint against defendant Big Heart Pet Brands, Inc. ("Defendant"), to cause Defendant to disclose that its pet food sold throughout the United States is adulterated and contains pentobarbital and to restore monies to the consumers and businesses who purchased the Contaminated Dog Foods (as defined herein) during the time Defendant failed to make such disclosures.  Plaintiff also seeks to bar Defendant from selling any dog food that contains any level of pentobarbital. Plaintiff alleges the following based upon personal knowledge as well as investigation by his counsel and as to all other matters, upon information and belief (Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery).

## DEFENDANT'S CONTAMINATED DOG FOODS ARE ADULTERATED WITH PENTOBARBITAL, A SUBSTANCE LARGELY USED TO EUTHANIZE ANIMALS

2.      Defendant manufactures, markets, advertises, labels, distributes, and sells Gravy Train Chunks in Gravy with Beef Chunks, Gravy Train Chunks in Gravy with T-Bone Flavor Chunks, Gravy Train Chunks in Gravy with Chicken Chunks, Gravy Train Strips in Gravy Beef Strips and Gravy Train with Lamb & Rice Chunks (the "Contaminated Dog Foods").[1]  The Contaminated Dog Foods contain pentobarbital, a barbiturate drug used as a sedative and anesthetic for animals, rendering it adulterated under relevant federal and state law.  Pentobarbital is now most commonly used to euthanize dogs, cats, and horses.[2]

---

[1] Discovery may reveal additional products that also contain pentobarbital and Plaintiff reserves the right to include any such products in this action.

[2] Petplace, "Pentobarbital for Dogs and Cats, July 16, 2015, https://www.petplace.com/article/drug-library/drug-library/library/pentobarbital-for-dogs-and-cats/

CLASS ACTION COMPLAINT

3.     Pentobarbital is a Class II controlled substance, and there is no safe or set level for pentobarbital in pet food. If it is present, the food is adulterated.[3] The ingestion of pentobarbital by your pet can lead to adverse health issues, including:

- Tyalism (salivation)
- Emesis (vomiting)
- Stool changes (soft to liquid stools, blood, mucus, urgency, explosive nature, etc.)
- Hyporexia (decreased appetite)
- Lethargy/depression
- Neurologic abnormalities (tremor, seizure, vocalization, unusual eye movements)
- Ataxia (difficulty walking)
- Collapse
- Coma
- Death[4]

4.     Despite laws governing pet foods and providing government oversight, "[p]et food manufacturers are responsible for taking appropriate steps to ensure that the food they produce is safe for consumption and properly labeled including verifying the identity and safety of the ingredients from suppliers."[5]

5.     "It is not acceptable to use animals euthanized with a chemical substance in pet or other animal foods…The detection of pentobarbital in pet food renders the product adulterated. It is the responsibly of the manufacturer to take the appropriate steps to ensure that the food they produce is safe for consumption and properly labeled."[6]

---

[3] http://www.fda.gov/AnimalVeterinary/SafetyHealth/ProductSafetyInformation/ucm544348.htm

[4] The Honest Kitchen, "Pentobarbital- What Is It, How it Entered the Pet Food Supply Chain, and what You Can Do To Protect Your Canines & Felines," (Mar. 1, 2017), available at https://www.thehonestkitchen.com/blog/pentobarbital-entered-pet-food-supply-chain-can-protect-pet/

[5] https://www.fda.gov/AnimalVeterinary/SafetyHealth/ProductSafetyInformation/ucm544348.htm (last visited Feb. 5, 2018)

[6] *Id.*

CLASS ACTION COMPLAINT

6.    Pentobarbital residue from euthanized animals will continue to be present in pet food, even if it is rendered or canned at a high temperature or pressure.[7]

7.    Pentobarbital is routinely used to euthanize animals, and the most likely way it could get into dog food would be in rendered animal products. Rendered products come from a process that converts animal tissues to feed ingredients, including tissues from animals that were euthanized, decomposed, or diseased. Pentobarbital from euthanized animals survives the rendering process and could be present in the rendered feed ingredients used in pet food.

8.    Historically, the FDA has not aggressively taken action under the FDCA, § 342 (a)(1) or (5), against the pet food companies it found to have used non-slaughtered animals and whose pet foods contain pentobarbital. Therefore, manufacturers in the pet food industry, including Defendant, have continued their illegal practice of using non-slaughtered animals that may contain poisonous substances, like pentobarbital, in their pet foods.

9.    It has been recently revealed that Defendant was knowingly, recklessly, and/or negligently selling contaminated dog food containing pentobarbital, a substance largely used to euthanize animals.

10.    On February 8, 2018, WJLA, an ABC network affiliate in Washington, D.C., reported that an independent investigation determined the Contaminated Dog Foods contained pentobarbital.

---

[7] *Id.*

CLASS ACTION COMPLAINT

11.    The independent seven-month long investigation determined the Contaminated Dog Foods contained pentobarbital. The investigation utilized two independent labs.  The results from both labs showed the Contaminated Dog Foods tested positive for pentobarbital. In fact, it was the only brand that tested positive for pentobarbital.[8]

12.    The WJLA report further stated that pentobarbital is not used on farm animals and questioned where the pentobarbital came from if not from euthanized dogs, cats, or horses. Defendant did not respond to the specific questions raised but instead stated in a press release: "We launched and are conducting a thorough investigation, including working closely with our suppliers, to determine the accuracy of these results and the methodology used."[9]

## REACTIONS TO THE NONDISCLOSURE AND MATERIALITY OF THE PRESENCE OF PENTOBARBITAL IN THE CONTAMINATED DOG FOODS

13.    Shortly after the WJLA report exposed the fact that the Contaminated Dog Foods contained levels of pentobarbital, Defendant issued a press release assuring consumers, including Plaintiff and the proposed class, that it was "confident in the safety of our products and do not believe you [a consumer] has to take any action." Exhibit A.

14.    In this same statement, Defendant admitted that pentobarbital is "[] not something that is added to the pet food. However, it could unintentionally be in raw materials provided by the supplier. We regularly audit our suppliers and have assurances from them about the quality and specifications of the materials they supply us. Raw materials that include pentobarbital do not meet our specifications." *Id*.

15.    However, Defendant later officially withdrew certain products from the marketplace.  Defendant also altered its earlier press release by removing the statements

---

[8]http://wjla.com/features/7-on-your-side/fda-to-investigate-after-abc7-exposes-euthanasia-drug-in-dog-food

[9] *Id.*

noted above regarding its confidence in the safety of its products and assurances from its suppliers as to the quality of the raw materials. Exhibit B.

16.    Defendant further edited the press release by removing its earlier statement that it follows the American Association Feed Official (AAFCO) standards. *Compare* Exhibit A and Exhibit B.

17.    Defendant's changes to the press release suggest Defendant was aware the Contaminated Dog Foods contained pentobarbital.

18.    Within days of the public revelation that the Contaminate Dog Foods contain pentobarbital, Defendant voluntarily withdrew 27 products, including 10 Gravy Train wet food products.[10]   The voluntary withdrawal included the additional brands of Kibble N' Bits, Skippy, and Ol' Roy.

19.    Defendant has yet to disclose its testing results or the name of the manufacturing plant and/or supplier that it references as the suspected source of the contaminated raw materials containing pentobarbital.

20.    On February 16, 2018, the FDA issued an alert to consumers that addressed the voluntarily withdrawal of the certain products by Defendant. In this alert, the FDA stated: "Pentobarbital is a barbiturate drug that is most commonly used in animals as a sedative, anesthetic, or for euthanasia.  The FDA's preliminary evaluation of the testing results of Gravy Train samples indicates that the low level of pentobarbital present in the withdrawn products is unlikely to pose a health risk to pets. However, pentobarbital should never be present in pet food and products containing any amount of pentobarbital are considered to be adulterated."[11]

21.    This same alert further stated: "However, any detection of pentobarbital in pet food is a violation of the Federal Food, Drug, and Cosmetic Act—simply put,

---

[10] http://www.gravytraindog.com/information

[11] https://www.fda.gov/animalveterinary/newsevents/ucm597135.htm

CLASS ACTION COMPLAINT

pentobarbital should not be in pet food. The FDA is investigating to learn the potential source and route of the contamination."

22.    On February 23, 2018, Defendant issued another press release, stating that it had identified the source of the pentobarbital through "[t]esting done by scientists at an independent, third-party microbiology laboratory." Defendant stated the testing found "a single, minor ingredient (beef fat), used only in the four wet dog food brands, was the source of the contamination."[12]

23.    Defendant did not identify exactly what was tested – whether it was cans of the food pulled from the shelves; cans shipped directly from the manufacturing plant; and/or isolated samples of beef fat from the supplier. Defendant claimed the tested beef fat was sourced from cattle from the United States. However, Defendant has offered no information about how it identified this particular ingredient or whether it tested any other ingredients included in the recalled pet foods.[13] Additionally, beef fat is not an ingredient listed on the label of any of the Contaminated Dog Foods.[14]

24.    Defendant also did not specify what animals they tested the Contaminated Dog Foods for beyond cattle. When conducting DNA testing, it must be determined beforehand what species will be looked for (i.e., dog, cat, cattle, horse, etc.). Defendant has not disclosed whether its testing looked for dog, cat, or horse DNA.

25.    In the same press release, Defendant admitted the "[] presence [of pentobarbital] at any level is not acceptable and is not up to our quality standards."

26.    Defendant has not disclosed the name of the manufacturing plant and/or supplier referenced as the suspected source of the contaminated raw materials containing pentobarbital.

_____

[12] http://www.jmsmucker.com/company-news/brand-news-releases-article/2334404

[13] Id.; http://www.gravytraindog.com/information

[14]    http://wjla.com/features/7-on-your-side/fda-investigation-continues-into-dog-food-contaminated-with-euthanasia-drug

27.    On March 2, 2018, Defendant further changed its statements regarding the "source of contamination."   The type of animal fats the Defendant now claims are the sources of pentobarbital in the Contaminated Dog Foods was expanded to include pig and chicken fat and "no other animal of the nine types tested."[15]  However, Defendant has still failed to disclose whether its tests looked for dog and/or cat DNA in the nine types of animal fats tested.

28.    In addition, Defendant further edited its February 23, 2018, press release by changing from a "voluntary withdrawal" of the specific products to a "class III recall."[16]

29.    Consumers have also reacted to the news that Defendant allowed its products to be sold with no disclosure of the inclusion of pentobarbital.  Indeed, comments on social media highlight that reasonable consumers, like Plaintiff and the Class, had no idea they may be feeding their beloved pets adulterated food, a critical fact they believe should have been disclosed to the public.

**DEFENDANT KNOWINGLY MISLEADS CONSUMERS THROUGH ITS REPRESENTATIONS, PACKAGING, LABELS, STATEMENTS, WARRANTIES AND SELLING THE CONTAMINATED DOG FOODS AS UNADULTERATED**

30.    Defendant falsely advertises the Contaminated Dog Foods as complete nutrition, quality, and healthy while omitting they are adulterated with pentobarbital.

31.    Defendant formulates, develops, manufactures, labels, distributes, markets, advertises, and sells its extensive Gravy Train lines of dry and wet pet food products in California and across the United States. Indeed, Defendant maintains it keeps rigorous quality and supplier standards from "start to finish" and performs three-tier auditing that includes third party auditors to ensure pure ingredients and fair labor are used in its

---

[15] http://www.gravytraindog.com/information

[16] *Id.*

**CLASS ACTION COMPLAINT**

1  products, including the Contaminated Dog Foods. As such, Defendant knew that the

2  Contaminated Dog Foods were adulterated pet food.[17]

3       32.    Defendant also knew the real risk that pentobarbital may appear in the

4  Contaminated Dog Foods if the manufacturing and sourcing were not properly monitored.

5  Indeed, this is not the first time that the Gravy Train line of food has been found to include

6  pentobarbital: "Back in 2001, analyses by the FDA found residue of the sedative in popular

7  brands like Nutro, Gravy Train and Kibbles 'n Bits."[18]

8       33.    Despite this, Defendant negligently, knowingly, fraudulently, and

9  wrongfully advertised and sold the Contaminated Dog Foods without any label or warning

10  that would indicate to consumers that the products contained any level of pentobarbital or

11  that Defendant utilized animals that were euthanized as a protein or meat by-product

12  source.

13       34.    Instead, the advertising and labels intentionally omit any reference to the

14  food being adulterated:



Gravy Train® Chunks In Gravy With Beef Chunks wet dog food is
bursting with the hearty flavor of real beef. And all the meaty
goodness is covered in a rich savory gravy to make a hearty meal
your dog will love.

---

26  [17] http://www.bigheartpet.com/assets/CR-Policy.pdf

27  [18] https://www.care2.com/causes/fda-says-pet-food-company-cannot-donate-recalled-products-to-shelter.html

28

35.     Defendant claims the Contaminated Dog Foods are "100 percent complete and balanced nutrition" without any mention that the Contaminated Dog Foods are in fact adulterated and contain pentobarbital.[19]

> **About this item**
>
> **Disclaimer:** While we aim to provide accurate product information, it is provided by manufacturers, suppliers and others, and has not been verified by us. See our disclaimer.
>
> Serve your four legged friend a deliciously hearty meal with Gravy Train Chunks In Gravy with T-Bone Flavor Chunks Wet Dog Food. Each mouthwatering bite has the flavor of T-Bone steak and all the meaty goodness is covered in a savory gravy that dogs love. This gravy train dog food offers a satisfying meal that provides 100 percent complete and balanced nutrition for all life stages. Feed it to your furry friend as a reward for good behavior or learning a new trickor serve it as a regular meal. Gravy Train Chunks In Gravy with T-Bone Flavor Chunks Wet Dog Food comes in a 13.2 oz can.

36.     Defendant's omissions are not only material but also false, misleading, and reasonably likely to deceive the public.  This is true, especially in light of the long-standing campaign by Defendant to market all its products, including the Contaminated Dog Foods, as "providing safe, healthy, and high quality food" with the "the purest ingredients"[20]

37.     Moreover, Defendant's Corporate Responsibility Policy states its top priority is the "safety and quality" of its products: [21]

> **Pet food safety and quality.** *Big Heart Pet Brands top priority is the safety and quality of our products.  Our goal is to produce the finest pet food products available on the market today. All of our products are made under a system of strict food safety and quality controls combined with ongoing inspection and monitoring.  All of our programs are designed to exceed the Global Food Safety Initiative standards.  Our products are made with nutritious, quality ingredients that meet the applicable standards and specifications of the U.S. Department of Agriculture (USDA), Association of American Feed Control Officials (AAFCO) and the Food & Drug Administration (FDA).  Each of our products is processed and packaged following strict food safety and quality control procedures that comply with the Good Manufacturing Practices established by the FDA. These procedures ensure that the resulting food will be pure, wholesome and safe for pets.*

---

[19]Walmart, Gravy Train T-Bone Flavor Wet Dog Food, https://www.walmart.com/ip/Gravy-Train-T-Bone-Flavor-Wet-Dog-Food-13-2-Oz/44465093#read-more

[20]Big Heart Pet Brands, "Pets," http://www.bigheartpet.com/corporate-responsibility/pets.aspx

[21]Big Heart Pet Brands, Corporate Responsibility Policy," http://www.bigheartpet.com/assets/CR-Policy.pdf

1

2      38.    In this same document, Defendant claims that it has a "rigorous supplier

3   approval process" and only purchases ingredients from "reputable suppliers." Defendant

4   goes further to declare that once a supplier is approved, "a comprehensive testing program

5   is in place to assess the safety and quality of the ingredients upon receipt. This includes a

6   combination of laboratory analysis and physical inspection of the ingredients."[22]

7      39.    Finally, Defendant highlights the strict oversight it supposedly applies across

8   all its brands, including Gravy Train, to ensure high quality products "from start to finish,

9   inside and out:"[23]

10

11

12

We apply the same expectations of quality that we
hold for ourselves to our suppliers. Our supplier
management program includes an extensive evaluation
of manufacturing locations and a comprehensive testing
program that is used to assess the safety and quality
of ingredients upon receipt. This program includes
a combination of laboratory analysis and physical
inspection.

Through rigorous commitment to the quality of our
products—from start to finish, inside and out—Big Heart
Pet Brands is able to nurture the bond between pets and
the people who love them.

13

14

15

16

17      40.    Following the discovery of pentobarbital in the Contaminated Dog Foods,

18   Defendant's own actions show the misleading representations concerning its supposed

19   rigorous and strict quality control.  Specifically, Defendant only recently started testing

20   "all of our products for the presence of pentobarbital as a new quality assurance protocol."

21   Defendant further acknowledged the lack of proper quality control and oversight by stating,

22   "In addition, we are enhancing our sourcing and supplier oversight procedures to ensure

23   this does not occur again."[24]

24   _____

25   [22] *Id.*

26   [23]Big     Heart     Pet     Brands,     "Corporate     Responsibility     Summary
     2014,"http://www.bigheartpet.com/assets/CorporateResponsibilitySummaryBrochure201

27   4.pdf

28   [24] http:// www.gravytraindog.com/information

CLASS ACTION COMPLAINT

41.     Defendant's advertising campaign is deceptive by using these descriptions, promises, and representations because there was no label or warning indicating to consumers that the products contained any level of pentobarbital or that Defendant utilized animals that were euthanized as a protein or meat by-product source. Defendant's statements, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the Contaminated Dog Foods are healthy, safe, have only pure ingredients, and are manufactured under rigorous standards.

42.     Defendant chose to advertise, label, and market its Contaminated Dog Foods with no disclosure that it was adulterated with pentobarbital, and instead advertised, labeled, and marketed its Products, including the Contaminated Dog Foods, as pure, high quality, healthy, and safe for dogs to ingest.  The Contaminated Dog Foods are available at numerous retail and online outlets.

43.     In fact, Defendant made affirmative misleading representations that its products, including the Contaminated Dog Foods, were not adulterated and did not contain any controlled substance, including pentobarbital. Specifically, Defendant promised to its consumers that all product met USDA, AAFCO, and FDA standards.[25]

44.     Defendant's assertions are untrue, as the Contaminated Dog Foods are adulterated in violation of state and federal laws and regulations. Specifically, under the FDCA, a food is adulterated if it "bears or contains any poisonous or deleterious substance which may render it injurious to health." 21 U.S.C. §342. Under California law, pet food is considered adulterated if "it bears or contains any poisonous or deleterious substance that may render it injurious to health…" or "if damage or inferiority has been concealed in any manner." Cal. Health & Safety Code §113090(a), (h). California's statute also provides that pet food ingredients "of animal or poultry origin shall be only from animals or poultry slaughtered or processed in an approved or licensed establishment… Animal or poultry classified as 'deads' are prohibited." Cal. Health & Safety Code §113035. Florida likewise

---

[25] http://www.bigheartpet.com/assets/CR-Policy.pdf

CLASS ACTION COMPLAINT

1  prohibits the sale of adulterated food such as the Contaminated Dog Foods under Fla. Stat.

2  § 500.10.

3       45.    The Contaminated Dog Foods are widely advertised.

4       46.    Defendant's webpage and adopted corporate policies repeatedly made the

5  misleading statements about the Contaminated Dog Foods described above and, prior to

6  the WJLA investigation, lacked any mention of pentobarbital or the fact that Defendant

7  used euthanized animals as a source of protein or meat by-product. As a result of the

8  investigation, Defendant amended its webpage several times and acknowledged that the

9  Contaminated Dog Foods did in fact contain pentobarbital.

10       47.    As a result of Defendant's omissions and misrepresentations, a reasonable

11  consumer would have no reason to suspect the presence of pentobarbital without

12  conducting his or her own scientific tests or reviewing third-party scientific testing of these

13  products.

14       48.    Consumers have increasingly become more aware and cautious about the

15  nutritional value and ingredients in the pet food they choose to purchase.

16       49.    Defendant knew a consumer would feed the Contaminated Dog Foods

17  multiple times each day to his or her dog, causing the dog(s) to be repeatedly exposed to

18  the barbiturate.

19       50.    A reasonable consumer, such as Plaintiff and other members of the Classes

20  (as defined herein), would have no reason to expect and anticipate that the Contaminated

21  Dog Foods are made of anything other than pure ingredients from reputable suppliers and

22  that quality is not the Defendant's top priority as promised by Defendant.  Non-disclosure

23  and the concealment of any level of pentobarbital or utilization of euthanized animals as a

24  protein or meat by-product source in the Contaminated Dog Foods coupled with the partial

25  disclosures and/or misrepresentations that the food is pure, quality, healthy, and safe by

26  Defendant is intended to and does, in fact, cause consumers to purchase a product they

27  would not have bought if the true nature of the quality and ingredients were disclosed,

28  including that the fact the Contaminated Dog Foods are adulterated.   As a result of these

- 12 -

1  false statements, omissions, and concealment, Defendant has generated substantial sales of

2  the Contaminated Dog Foods.

3        51.    Plaintiff brings this action individually and on behalf of all other similarly

4  situated consumers within the United States who purchased the Contaminated Dog Foods

5  in order to cause the disclosure of the inclusion of pentobarbital and/or the utilization of

6  euthanized animals as a protein or meat by-product source in the Contaminated Dog Foods,

7  to correct the false and misleading perception Defendant has created in the minds of

8  consumers that the Contaminated Dog Foods are high quality, safe, and healthy and to

9  obtain redress for those who have purchased the Contaminated Dog Foods.

10                              **JURISDICTION AND VENUE**

11        52.    This Court has original jurisdiction over all causes of action asserted herein

12  under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the matter in

13  controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and

14  more than two-thirds of the Class reside in states other than the states in which Defendant

15  is a citizen and in which this case is filed, and therefore any exemptions to jurisdiction

16  under 28 U.S.C. § 1332(d) do not apply.

17        53.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Plaintiff

18  suffered injury as a result of Defendant's acts in this district, many of the acts and

19  transactions giving rise to this action occurred in this district, Defendant conducts

20  substantial business in this district, Defendant has intentionally availed themselves of the

21  laws and markets of this district, and Defendant is subject to personal jurisdiction in this

22  district.

23                              **INTRADISTRICT ASSIGNMENT**

24        54.    A substantial portion of the transactions and wrongdoings which gave rise to

25  the claims in this action occurred in the County of Marin, and as such, this action is properly

26  assigned to the San Francisco division of this Court.

27

28

CLASS ACTION COMPLAINT

## THE PARTIES

55.     Plaintiff Neil Sebastiano ("Plaintiff") is, and at all times relevant hereto has been, a citizen of the State of Florida.  Plaintiff purchased certain lines of the Contaminated Dog Foods (including Gravy Train Chunks in Gravy with Beef Chunks and Gravy Train Strips in Gravy with Beef Strips) and fed the Contaminated Dog Foods to his dog, Samson, a Rottweiler-Shepherd mix.  Plaintiff Sebastiano trusted Defendant's representations about the safety and quality of its products when he purchased the Contaminated Dog Foods.

56.     Beginning in approximately June 2015, Plaintiff generally purchased 10-12 cans of the Contaminated Dog Foods each month from his local Walmart in Spring Hill, Florida.   His last purchase was approximately November 1, 2017.   In August 2017, Plaintiff's dog became weak and confused, began vomiting, had blood in his stool, lost weight, no longer wanted to eat, and had trouble standing and walking.  At only seven and a half years old, Samson died on December 4, 2017.

57.     During the time Plaintiff purchased the Contaminated Dog Foods, and because of the false and misleading claims, warranties, representations, advertisements, and other marketing by Defendant, Plaintiff was unaware that the Contaminated Dog Foods contained any level of pentobarbital, a substance largely used to euthanize animals. Plaintiff was injured by purchasing the Contaminated Dog Foods that had no value or *de minimis* value because they were adulterated.

58.     As the result of Defendant's deceptive and negligent conduct alleged herein, Plaintiff was injured when he purchased the Contaminated Dog Foods, which did not deliver what Defendant promised and had no value or *de minimis* value as they were adulterated. Plaintiff was further injured as he did business with a company he would not have if he knew the Contaminated Dog Foods contained any level of pentobarbital or that Defendant utilized euthanized animals as a protein source.  He purchased the adulterated Contaminated Dog Foods on the assumption that the labeling of the Contaminated Dog Foods was accurate and that it was unadulterated, pure, high quality, healthy, and safe for dogs to ingest and did not include euthanized animals as a protein source.  Further, should

1   Plaintiff encounter the Contaminated Dog Foods in the future, he could not rely on the

2   truthfulness of the packaging, absent corrective changes to the packaging and advertising

3   of the Contaminated Dog Foods.

4       59.    Defendant Big Heart Pet Brands, Inc, is a subsidiary of J.M. Smucker

5   Company and its headquarters are located at One Maritime Plaza, San Francisco,

6   California.  Defendant manufactures, formulates, produces, distributes, labels, markets,

7   advertises, and sells the Contaminated Dog Foods under the Gravy Train dog food brand

8   name throughout the United States.  The advertising for the Contaminated Dog Foods,

9   relied upon by Plaintiff, was prepared and/or approved by Defendant and its agents in the

10  State of California, and was disseminated throughout Florida by Defendant and its agents

11  from the State of California through advertising and labeling that contained the

12  misrepresentations and omissions alleged herein.  The advertising and labeling for the

13  Contaminated Dog Foods was designed to encourage consumers to purchase the

14  Contaminated Dog Foods and reasonably misled the reasonable consumer, i.e., Plaintiff

15  and the Class, into purchasing the Contaminated Dog Foods.  Defendant owns,

16  manufactures, and distributes the Contaminated Dog Foods, and it created and/or

17  authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and

18  advertising for the Contaminated Dog Foods.

19      60.    The Contaminated Dog Foods, at a minimum, include:

20          (a)    Gravy Train Chunks in Gravy with Beef Chunks:



1

2          (b)     Gravy Train with Beef Chunks:

3

4

5

6

7

8

9

10



11

12          (c)     Gravy Train with T-Bone Flavor Chunks:

13

14

15

16

17

18

19



20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(d)     Gravy Train Chunks in Gravy with T-Bone Flavor Chunks:



(e)     Gravy Train With Chicken Chunks:



(f)     Gravy Train Strips in Gravy With Beef Strips:



CLASS ACTION COMPLAINT

(g)    Gravy Train Chunks in Gravy with Lamb and Rice Chunks:



(h)    Gravy Train Chicken, Beef & Liver Medley:



(i)    Gravy Train Chunks in Gravy Stew:



CLASS ACTION COMPLAINT

1

2

### DEFENDANT'S STATEMENTS AND OMISSIONS VIOLATE CALIFORNIA AND FLORIDA LAWS

3

4

5

6

7

8

9

10

11

12

61.    California and Florida laws are designed to ensure that a company's claims about its products are truthful and accurate.  Defendant violated California and Florida laws by incorrectly claiming that the Contaminated Dog Foods are nourishing, pure, healthy, quality, and safe and offer 100 percent complete and balanced nutrition with the purest ingredients while meeting all relevant federal regulations.  In reality, the Contaminated Dog Foods are adulterated and contain pentobarbital, which is not nourishing, healthy, quality, or pure and caused the product to not meet the so-called rigorous supplier standards claimed by Defendant.  Indeed, Defendant chose to omit that the Contaminated Dog Foods were adulterated with pentobarbital or that Defendant utilized euthanized animals as a protein source in its representations about the Contaminated Dog Foods.

13

14

62.    Defendant's marketing and advertising campaign has been sufficiently lengthy in duration and widespread in dissemination.

15

16

17

18

63.    Defendant has engaged in this long-term advertising campaign to convince potential customers that the Contaminated Dog Foods are pure, quality, healthy, and safe for consumption and offer 100 percent complete and balanced nutrition with the purest ingredients.

19

### PLAINTIFF'S RELIANCE WAS REASONABLE AND FORESEEN BY DEFENDANT

20

21

22

64.    Plaintiff    reasonably    relied    on    Defendant's    own    statements, misrepresentations, omissions, and advertising concerning the particular qualities and benefits of the Contaminated Dog Foods.

23

24

65.    Plaintiff read and relied upon the labels of the Contaminated Dog Foods in making his purchasing decisions.

25

26

66.    A reasonable consumer would consider the labeling of a product when deciding whether to purchase it.  Here, Plaintiff relied on the specific statements and

27

28

CLASS ACTION COMPLAINT

misrepresentations by Defendant, who did not disclose that the Contaminated Dog Foods were adulterated or contained pentobarbital, a substance largely used to euthanize animals.

## DEFENDANT'S KNOWLEDGE AND NOTICE OF THEIR BREACHES OF ITS EXPRESS AND IMPLIED WARRANTIES

67.     Defendant has received sufficient notice of its breaches of express and implied warranties.  Defendant has, and had, exclusive knowledge of the physical and chemical make-up of the Contaminated Dog Foods.

68.     Defendant also had notice of the real risk that pentobarbital may appear in the Contaminated Dog Foods if the manufacturing and ingredients sourcing were not properly monitored. Indeed, this is not the first time that the Gravy Train line of food has been determined to include pentobarbital.[26]

## PRIVITY EXISTS WITH PLAINTIFFS AND THE PROPOSED CLASS

69.     Defendant knew that consumers such as Plaintiff and the proposed Classes would be the end purchasers of the Contaminated Dog Foods and the targets of its advertising and statements.

70.     Defendant intended that the advertising, labeling, statements, and representations would be considered by the end purchasers of the Contaminated Dog Foods, including Plaintiff and the proposed Classes.

71.     Defendant directly marketed to Plaintiff and the proposed Classes through statements on its website, labeling, advertising, and packaging.

72.     Plaintiff and the proposed Classes are the intended beneficiaries of the expressed and implied warranties.

---

[26] https://www.care2.com/causes/fda-says-pet-food-company-cannot-donate-recalled-products-to-shelter.html

CLASS ACTION COMPLAINT

1

**CLASS ACTION ALLEGATIONS**

2      73.     Plaintiff brings this action individually and on behalf of the following Class

3   pursuant to Rule 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

4            All persons who are citizens of the United States who, from
             February 1, 2008 to the present, purchased the Contaminated
5            Dog Foods for household or business use, and not for resale
             (the "Class").
6

7      74.     Plaintiff also brings this action individually and on behalf of the following

8   Subclass pursuant to Rule 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil

9   Procedure:

10           All persons who are citizens of the State of Florida who, from
             February 1, 2008, to the present, purchased the Contaminated
11           Dog Foods for household or business use, and not for resale
             (the "Subclass").
12

13     75.     Excluded from the Class and Subclass (collectively "Classes") are the

14  Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal

15  representatives, or employees; and co-conspirators, all governmental entities, and any

16  judge, justice, or judicial officer presiding over this matter.

17     76.     This action is brought and may be properly maintained as a class action.

18  There is a well-defined community of interests in this litigation and the members of the

19  Classes are easily ascertainable.

20     77.     The members in the proposed Classes are so numerous that individual joinder

21  of all members is impracticable, and the disposition of the claims of all Class members in

22  a single action will provide substantial benefits to the parties and Court.

23     78.     Questions of law and fact common to Plaintiffs and the Classes include, but

24  are not limited to, the following:

25           (a)     whether Defendant owed a duty of care to the Classes;

26           (b)     whether Defendant knew or should have known that the Contaminated

27  Dog Foods were adulterated or contained pentobarbital;

28

CLASS ACTION COMPLAINT

1    (c)  whether Defendant represented and continues to represent that the

2 Contaminated Dog Foods are healthy, quality, pure, and safe;

3    (d)  whether Defendant represented and continues to represent that the

4 Contaminated Dog Foods are manufactured in compliance with all governing regulations;

5    (e)  whether Defendant failed to state that the Contaminated Dog Foods

6 are in fact adulterated under Federal and California law;

7    (f)  whether Defendant's representations and omissions in advertising

8 and/or labeling are false, deceptive, and misleading;

9    (g)  whether those representations and omissions are likely to deceive a

10 reasonable consumer;

11    (h)  whether Defendant had knowledge that those representations and

12 omissions were false, deceptive, and misleading;

13    (i)  whether Defendant continues to disseminate those representations and

14 omissions despite knowledge that the representations are false, deceptive, and misleading;

15    (j)  whether a representation that a product is healthy, pure, quality, and

16 nutritious coupled with omissions that the Contaminated Dog Foods were adulterated or

17 contained Pentobarbital is material to a reasonable consumer;

18    (k)  whether Defendant violated California Business & Professions Code

19 sections 17200, *et seq.*;

20    (l)  whether Defendant violated California Business & Professions Code

21 sections 17500, *et seq.*;

22    (m)  whether Defendant violated California Civil Code sections 1750, *et*

23 *seq.*;

24    (n)  whether Defendant's fraudulently concealed from the Classes that the

25 Contaminated Dog Foods were adulterated;

26    (o)  whether Defendant violated the Florida Deceptive and Unfair Trade

27 Practices Act;

28    (p)  whether Defendant breached its express and implied warranties;

(q)     whether Defendant's conduct was negligent per se under applicable law;

(r)     whether Plaintiff and the members of the Classes are entitled to actual, statutory, and punitive damages; and

(s)     whether Plaintiff and members of the Classes are entitled to declaratory and injunctive relief.

79.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Classes.  Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

80.    Plaintiff's claims are typical of Class and Subclass members' claims in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

81.    Plaintiff will fairly and adequately represent and protect the interests of the Classes, has no interests incompatible with the interests of the Classes, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

82.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class and Subclass member is small such that, absent representative litigation, it would be infeasible for Class and Subclass members to redress the wrongs done to them.

83.    Questions of law and fact common to the Classes predominate over any questions affecting only individual Class and Subclass members.

84.    As a result of the foregoing, class treatment is appropriate.

## COUNT I

### (Negligent Misrepresentation Against Defendant on Behalf of the Class)

85.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

86.    Plaintiff reasonably placed his trust and reliance in Defendant's representations that the Contaminated Dog Foods are healthy, safe, pure, high quality, and not adulterated with substances such as pentobarbital.

87.    Plaintiff reasonably placed his trust and reliance in Defendant to disclose if the Contaminated Dog Foods were adulterated, contained pentobarbital, or utilized euthanized animals as a protein or meat by-product source.

88.    Because of the relationship between the parties, Defendant owed a duty to use reasonable care to impart correct and reliable disclosures concerning the true nature, quality, and ingredients of the Contaminated Dog Foods or, based upon its superior knowledge, having spoken, to say enough to not be misleading.

89.    Defendant breached its duty to Plaintiff and the Class by providing false, misleading, and/or partial disclosures and/or deceptive information regarding the true nature, quality, and ingredients of the Contaminated Dog Foods.

90.    Plaintiff and the Class reasonably and justifiably relied upon the information supplied to them by the Defendant.  As a result, Plaintiff and the Class purchased the Contaminated Dog Foods that should not have been sold because it was adulterated.

91.    Defendant failed to use reasonable care in its communications and representations to Plaintiff and Class.

92.    By virtue of Defendant's negligent misrepresentations, Plaintiff and the Class have been damaged in an amount to be proven at trial or alternatively, seek rescission and disgorgement under this Count.

1

## COUNT II

2

3

**(Violations of California's Consumer Legal Remedies Act, California Civil Code §§1750, *Et Seq.*, Against Defendant on Behalf of the Class)**

4     93.     Plaintiff incorporates by reference and realleges each and every allegation

5   contained above, as though fully set forth herein.

6     94.     Plaintiff and each proposed Class member are "consumers," as that term is

7   defined in California Civil Code section 1761(d).

8     95.     The Contaminated Dog Foods are "goods," as that term is defined in

9   California Civil Code section 1761(a).

10     96.     Defendant is a "person" as that term is defined in California Civil Code

11   section 1761(c).

12     97.     Plaintiff and each proposed Class member's purchases of Defendant's

13   products constituted "transactions," as that term is defined in California Civil Code section

14   1761(e).

15     98.     Defendant's conduct alleged herein violates the following provisions of

16   California's Consumer Legal Remedies Act (the "CLRA"):

17     (a)     California Civil Code section 1770(a)(5), by representing that the

18   Contaminated Dog Foods are pure, quality, healthy, and safe for consumption and by

19   failing to make any mention that the Contaminated Dog Foods were in fact adulterated by

20   the controlled substance, pentobarbital.

21     (b)     California Civil Code section 1770(a)(7), by representing that the

22   Contaminated Dog Foods were of a particular standard, quality, or grade, when they were

23   in fact adulterated and not fit for consumption;

24     (c)     California Civil Code section 1770(a)(9), by advertising the

25   Contaminated Dog Foods with intent not to sell them as advertised; and

26     (d)     California Civil Code section 1770(a)(16), by representing that the

27   Contaminated Dog Foods have been supplied in accordance with previous representations

28   when they have not.

99.     As a direct and proximate result of these violations, Plaintiff and the Class have been harmed, and that harm will continue unless Defendant is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Contaminated Dog Foods.

100.    Plaintiff seeks an award of attorneys' fees pursuant to, inter alia, California Civil Code section 1780(e) and California Code of Civil Procedure section 1021.5.

## COUNT III

**(Violations of California False Advertising Law, California Business & Professions Code §§17500, *Et Seq.*, Against Defendant on Behalf of the Class)**

101.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

102.    California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading."  Cal. Bus. & Prof. Code §17500.

103.    As set forth herein, Defendant's claims that the Contaminated Dog Foods are healthy and safe for consumption are literally false and likely to deceive the public.

104.    Defendant's claims that the Contaminated Dog Foods are pure, quality, healthy, and safe for consumption are untrue or misleading because these claims fail to disclose that the Contaminated Dog Foods were in fact adulterated by the controlled substance, pentobarbital.

105.    Defendant's claim that the Contaminated Dog Foods are 100 percent complete and balanced nutrition is untrue or misleading because it fails to disclose that the Contaminated Dog Foods were in fact adulterated by pentobarbital.

106.    Defendant knew, or reasonably should have known, that its claims were untrue or misleading.

107.    Plaintiff and members of the Classes are entitled to injunctive and equitable relief and restitution in the amount they spent on the Contaminated Dog Foods.

1

2

3

**COUNT IV**

**(Violations of the Unfair Competition Law, California Business
& Professions Code §§17200, *Et Seq.*, Against Defendant on Behalf of the Class)**

4

5

108.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

6

7

109.    The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §17200.

8

**Fraudulent**

9

10

11

12

110.    Defendant's statements that the Contaminated Dog Foods are pure, quality, healthy, safe, and provide 100 percent complete and balanced nutrition are false and likely to deceive the public, as is Defendant's failure to mention that the Contaminated Dog Foods are adulterated and contain pentobarbital.

13

**Unlawful**

14

15

16

111.    As alleged herein, Defendant has sold advertised the Contaminated Dog Foods with false or misleading claims, such that Defendant's actions as alleged herein violate at least the following laws:

17

18

(a)    The CLRA, California Business & Professions Code sections 1750, *et seq.*; and

19

20

(b)    The False Advertising Law, California Business & Professions Code sections 17500, *et seq.*

21

**Unfair**

22

23

24

25

112.    Defendant's conduct with respect to the labeling, advertising, marketing, and sale of the Contaminated Dog Foods is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

26

27

113.    Defendant's conduct with respect to the labeling, advertising, marketing, and sale of the Contaminated Dog Foods is also unfair because it violates public policy as

28

1   declared by specific constitutional, statutory, or regulatory provisions, including, but not

2   limited to, the False Advertising Law and the CLRA.

3        114.    Defendant's conduct with respect to the labeling, advertising, marketing, and

4   sale of the Contaminated Dog Foods is also unfair because the consumer injury is

5   substantial, not outweighed by benefits to consumers or competition, and not one

6   consumers, themselves, can reasonably avoid.

7        115.    In accordance with California Business & Professions Code section 17203,

8   Plaintiff seeks an order enjoining Defendant from continuing to conduct business through

9   fraudulent or unlawful acts and practices and to commence a corrective advertising

10  campaign.    Defendant's conduct is ongoing and continuing, such that prospective

11  injunctive relief is necessary.

12       116.    On behalf of himself and the Class, Plaintiff also seeks an order for the

13  restitution of all monies from the sale the Contaminated Dog Foods, which were unjustly

14  acquired through acts of fraudulent, unfair, or unlawful competition.

## COUNT V

**(Negligence, Against Defendant on Behalf of the Classes)**

17       117.    Plaintiff incorporates by reference and realleges each and every allegation

18  contained above, as though fully set forth herein.

19       118.    Defendant's conduct is negligent per se under California and Florida law.

20       119.    As set forth above, Defendant violated its statutory duties under California's

21  CLRA and FLA and the Florida Deceptive and Unfair Trade Practices Act by falsely

22  representing that the Contaminated Dog Foods are pure, quality, healthy, nutritious, and

23  safe for consumption while at the same time failing to disclose that the Contaminated Dog

24  Foods contained the controlled substance pentobarbital.

25       120.    As set forth above, Defendant also violated its statutory duties under Federal,

26  California, and Florida law by selling adulterated pet food to Plaintiff and members of the

27  Classes.

28

121.     Defendant failed to exercise due care when it sold the Contaminated Dog Foods to Plaintiff and the Class Members based on: (1) its exclusive knowledge of the ingredients, content, and sourcing materials of the Contaminated Dog Foods; (2) failing to properly audit and monitor any third-party supplier as publicly represented to Plaintiff and the Classes; and (3) allowing the inclusion of a controlled substance (pentobarbital) in the Contaminated Dog Foods when Defendant's products had previously tested positive for this exact same drug.

122.     Defendant's violations of these statutes were a substantial factor in the harm suffered by Plaintiff and the Classes, including purchasing a product with *de minimis* value.

123.     By virtue of Defendant's negligence, Plaintiff and the Classes have been damaged in an amount to be proven at trial or alternatively, seek rescission and disgorgement under this Count.

## COUNT VI

### (Breach of Express Warranty, California Commercial Code §2313, Against Defendant on Behalf of the Class)

124.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

125.     As set forth herein, Defendant made express representations to Plaintiff and the Class that the Contaminated Dog Foods are pure, quality, healthy, and safe for consumption and 100 percent complete and balanced nutrition.

126.     Defendant also made express representations to Plaintiff and the Class that the Contaminated Dog Foods met all applicable regulations, including that they are not adulterated dog food, by allowing their sale in various stores throughout the United States.

127.     These promises became part of the basis of the bargain between the parties and thus constituted express warranties.

128.     There was a sale of goods from Defendant to Plaintiff and the Class members.

129.     On the basis of these express warranties, Defendant sold the Contaminated Dog Foods to Plaintiff and the Class.

130. Defendant knowingly breached the express warranties by selling the Contaminated Dog Foods, which are adulterated and contain pentobarbital.

131. Defendant was on notice of this breach as it was aware of the presence of pentobarbital and/or the use of euthanized animals as a protein or meat by-product source in the Contaminated Dog Foods.

132. Privity exists because Defendant expressly warranted to Plaintiff and the Class that the Contaminated Dog Foods were pure, quality, healthy, safe for consumption, unadulterated, and provided 100 percent complete and balanced nutrition.

133. Plaintiff and the Class reasonably relied on the express warranties by Defendant.

134. As a result of Defendant's breaches of its express warranties, Plaintiff and the Class sustained damages as they paid money for Contaminated Dog Foods that were not what Defendant represented and in fact were sold in violation of applicable regulations and law

135. Plaintiff on behalf of himself and the Class, seeks actual damages for Defendant's breach of warranty.

## <u>COUNT VII</u>

**(Breach of Implied Warranty, California Commercial Code §2314, Against Defendant on Behalf of the Class)**

136. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

137. As set forth herein, the Contaminated Dog Foods are not fit for their ordinary purposes as they were adulterated or similarly contaminated under Federal, California, and Florida laws, as previously alleged herein.

138. Defendant is a merchant engaging in the sale of goods to Plaintiff and the Class.

139. There was a sale of goods from Defendant to Plaintiff and the Class members.

CLASS ACTION COMPLAINT

140.    Defendant breached the implied warranties by selling the Contaminated Dog Foods that were adulterated with pentobarbital and not fit for their ordinary purpose.

141.    Defendant was on notice of this breach as it was aware of the presence of pentobarbital and/or the use of euthanized animals as a protein or meat by-product source in the Contaminated Dog Foods.

142.    Privity exists because Defendant impliedly warranted to Plaintiff and the Class that the Contaminated Dog Foods were unadulterated and fit for their ordinary purpose

143.    As a result of Defendant's breach of its implied warranties of merchantability, Plaintiff and the Class sustained damages as they paid money for the Contaminated Dog Foods that were not what Defendant represented.

144.    Plaintiff, on behalf of himself and the Class, seeks actual damages for Defendant's breach of warranty.

## **COUNT VIII**

**(Fraudulent Concealment Against Defendant on Behalf of the Class)**

145.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

146.    As alleged more fully herein, at the time Defendant sold the Contaminated Dog Foods to Plaintiff and Class Members, it knew it was adulterated with pentobarbital.

147.    At all times relevant herein, Defendant made misrepresentations of material fact to Plaintiff and the other Class Members as a means of concealing the true nature and quality of the Contaminated Dog Foods, claiming it was pure, nutritious, healthy, and quality without disclosing that the Contaminated Dog Foods were adulterated with pentobarbital.

148.    Defendant concealed material facts from Plaintiff and the other Class Members, including but not limited to:

(a)     the true nature and quality of the Contaminated Dog Foods;

CLASS ACTION COMPLAINT

1    (b) the inclusion of pentobarbital in the Contaminated Dog Foods; and

2    (c) that the Contaminated Dog Foods were not lawfully sold as labelled

3 and packaged as they were adulterated.

4  149. Defendant had a duty to disclose these facts, regardless of the existence of

5 privity, by virtue of (a) Defendant's exclusive knowledge about the true nature and

6 ingredients of the Contaminated Dog Foods; (b) Defendant's awareness that Plaintiff and

7 members of the proposed Class were not reasonably likely to discover these facts; (c)

8 Defendant's active concealment of those facts from Plaintiff and the proposed Class (by,

9 among other things, making the false representations described above); and (d)

10 Defendant's statutory and common-law obligations to disclose material information to the

11 consumers as alleged herein.

12  150. Plaintiff and members of the Class would have acted differently had

13 Defendant disclosed this information to them and allowed them to make a fully informed

14 decision before they purchased the Contaminated Dog Foods.

15  151. The facts Defendant has concealed from Plaintiff and the Class are material

16 and uniform in nature.

17  152. Defendant made misrepresentations of material fact in an effort to conceal

18 the actual nutritional value, true nature, and ingredients of the Contaminated Dog Foods

19 and to prevent Class Members from becoming aware of the nutritional value, true nature,

20 and ingredients of the Contaminated Dog Foods.  Plaintiff and the Class would have relied

21 on the Defendant's disclosure that pentobarbital was present in the Contaminated Dog

22 Foods

23  153. As a proximate result of Defendant's concealment and suppression of

24 material facts, Plaintiff and the Class have sustained damages by, among other things,

25 paying for the Contaminated Dog Foods that were adulterated and unlawfully sold to

26 consumers, causing the Contaminated Dog Foods to have zero or *de minimis* value.

27  154. Plaintiff, on behalf of himself and the Class, seeks actual damages for

28 Defendant's fraudulent concealment.

155.   Because Defendant engaged in the conduct alleged herein deliberately and with intent, Plaintiff and the Class are entitled to an award of punitive damages, the total amount of which shall be proven at trial.

## COUNT IX

**(Violations of Florida Deceptive and Unfair Trade Practices Act, Fl. Stat. § 501.201-501.23, Against Defendant on Behalf of the Subclass)**

156.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

157.    This is an action for relief under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statute section 501.201, *et seq*.

158.   The purpose of the FDUTPA is "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

159.   Plaintiff and each proposed Class member are "consumers," as defined by Florida Statute section 501.203(7).

160.   Florida Statute section 501.203(8) defines "trade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated.  'Trade or commerce' shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity."  The advertising, soliciting, providing, offering, or distribution of the Contaminated Dog Foods to Plaintiff and the Subclass is "trade or commerce" within the meaning of Florida Statute section 501.203(8).

161.   Florida Statute section 501.204(1) provides that "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

162.    Defendant engaged in unfair competition and unfair, unlawful, or fraudulent business practices by claiming the Contaminated Dog Foods were pure, quality, healthy, and safe for consumption and by knowingly, intentionally, and/or negligently concealing from Plaintiff and the Subclass the fact that the Contaminated Dog Foods were adulterated with pentobarbital, which was not readily discoverable.  Defendant should have disclosed such information because it was in a superior position to know the facts regarding the true make-up and quality of the Contaminated Dog Foods.  Plaintiff and the Subclass could not reasonably be expected to learn or discover the true facts regarding the make-up and/or quality of the Contaminated Dog Foods.

163.    The Defendant's unconscionable, illegal, unfair, and deceptive acts and practices violate the provisions of the FDUTPA.

164.    As a direct and proximate result of Defendant's acts and omissions, Plaintiff and the Subclass have suffered or will suffer damages for which they are entitled to relief pursuant to Florida Statute section 501.211(2) and which include, without limitation, a full refund for the Contaminated Dog Foods they purchased, all of which constitute cognizable damages under the FDITPA, section 501.201, et seq.

165.    Plaintiff and the Subclass are entitled to recover their reasonable attorneys' fees pursuant to Florida Statute section 501.2105 upon prevailing in this matter.

**COUNT X**
**(Breach of Express Warranty, Fla. Stat. § 672.313,**
**Against Defendant on Behalf of the Subclass)**

166.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

167.    As set forth herein, Defendant made express representations to Plaintiff and the Subclass that the Contaminated Dog Foods are pure, quality, healthy, safe for consumption, and provide 100 percent complete and balanced nutrition.

168.    Defendant also made express representations to Plaintiff and the Subclass that the Contaminated Dog Foods meet all applicable regulations, including that they are

- 34 -

not adulterated dog food, by allowing their sale in various stores throughout the United States.

169.    These promises became part of the basis of the bargain between the parties and thus constituted express warranties.

170.    There was a sale of goods from Defendant to Plaintiff and the Subclass members.

171.    On the basis of these express warranties, Defendant sold the Contaminated Dog Foods to Plaintiff and the Subclass.

172.    Defendant knowingly breached the express warranties by selling Contaminated Dog Foods that were adulterated and contained pentobarbital.

173.    Defendant was on notice of this breach as it was aware of the presence of pentobarbital and/or the use of euthanized animals as a source of protein or meat by-product in the Contaminated Dog Foods.

174.    Privity exists because Defendant expressly warranted to Plaintiff and the Subclass that the Contaminated Dog Foods were pure, quality, healthy, safe for consumption, unadulterated, and provided 100 percent complete and balanced nutrition.

175.    Plaintiff and the Subclass reasonably relied on the express warranties by Defendant.

176.    As a result of Defendant's breaches of its express warranties, Plaintiff and the Subclass sustained damages as they paid money for Contaminated Dog Foods that were not what Defendant represented and were sold in violation of applicable regulations and laws.

177.    Plaintiff, on behalf of himself and the Subclass, seeks actual damages for Defendant's breach of warranty.

CLASS ACTION COMPLAINT

**COUNT XI**
**(Breach of Implied Warranty, Fla. Stat. § 672.314,**
**Against Defendant on Behalf of the Subclass)**

178.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

179.    As set forth herein, the Contaminated Dog Foods are not fit for their ordinary purposes for which they are used as they were adulterated or similarly contaminated.

180.    The Contaminated Dog Foods also do not conform to the promises or affirmations of fact made on the packaging or labels.

181.    Defendant is a merchant engaging in the sale of goods to Plaintiff and the Subclass.

182.    There was a sale of goods from Defendant to Plaintiff and the Subclass members.

183.    Defendant breached the implied warranties by selling the Contaminated Dog Foods that were not fit for their ordinary purpose because they were adulterated dog food that contained pentobarbital.

184.    Defendant was on notice of this breach as it was aware of the presence of pentobarbital and/or the use of euthanized animals as a source of protein or meat by-product in the Contaminated Dog Foods.

185.    Privity exists because Defendant impliedly warranted to Plaintiff and the Subclass that the Contaminated Dog Foods were unadulterated and fit for their ordinary purpose.

186.    As a result of Defendant's breach of its implied warranties of merchantability, Plaintiff and the Subclass sustained damages as they paid money for the Contaminated Dog Foods that were not as Defendant represented.

187.    Plaintiff, on behalf of himself and the Subclass, seeks actual damages for Defendant's breach of warranty.

1

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as to each and every count, including:

A.    An order declaring this action to be a proper class action, appointing Plaintiff and his counsel to represent the Classes, and requiring Defendant to bear the costs of class notice;

B.    An order enjoining Defendant from selling the Contaminated Dog Foods until pentobarbital is removed;

C.    An order enjoining Defendant from selling the Contaminated Dog Foods in any manner;

D.    An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary corrective relief, such as recalling existing products;

E.    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

F.    An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the Unfair Competition Law, False Advertising Law, CLRA, or FDUTPA, plus pre- and post-judgment interest thereon;

G.    An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.    An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

I.    An order requiring Defendant to pay punitive damages on any count so allowable;

1    J.    An order awarding attorneys' fees and costs to Plaintiff, the Class, and the

2  Subclass; and

3    K.    An order providing for all other such equitable relief as may be just and

4  proper.

5

6                                    **JURY DEMAND**

7    Plaintiff hereby demands a trial by jury on all issues so triable.

8  Dated: March 7, 2018                    LOCKRIDGE GRINDAL NAUEN P.L.L.P.
                                          ROBERT K. SHELQUIST
9                                          REBECCA A. PETERSON (241858)

10

11                                         */s Rebecca Peterson*
                                          REBECCA A. PETERSON

12
                                          100 Washington Avenue South, Suite 2200
13                                         Minneapolis, MN 55401
                                          Telephone: (612) 339-6900
14                                         Facsimile: (612) 339-0981
                                          E-mail: rkshelquist@locklaw.com
15                                                  rapeterson@locklaw.com

16

17                                         ROBBINS ARROYO LLP
                                          KEVIN A. SEELY (199982)
18                                         STEVEN M. MCKANY (271405)
                                          600 B Street, Suite 1900
19                                         San Diego, CA 92101
                                          Telephone: (619) 525-3990
20                                         Facsimile: (619) 525-3991
                                          E-mail:  kseely@robbinsarroyo.com
21                                                  smckany@robbinsarroyo.com

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

GUSTAFSON GLUEK, PLLC
DANIEL E. GUSTAFSON
KARLA M. GLUEK
JOSEPH C. BOURNE (308196)
RAINA C. BORRELLI
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
kgluek@gustafsongluek.com
jbourne@gustafsongluek.com
rborrelli@gustafsongluek.com

CUNEO GILBERT & LADUCA, LLP
CHARLES LADUCA
KATHERINE VAN DYCK
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016
Telephone: 202-789-3960
Facsimile: 202-789-1813
E-mail: kvandyck@cuneolaw.com
charles@cuneolaw.com


LITE DEPALMA GREENBERG, LLC
JOSEPH DEPALMA
SUSANA CRUZ HODGE
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone:  (973) 623-3000
E-mail:   jdepalma@litedepalma.com
            scruzhodge@litedepalma.com

Attorneys for Plaintiff

CLASS ACTION COMPLAINT